**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02969-SKC

MICHELE ST. MICHAEL,

    Plaintiff,

v.

ROCKY MOUNTAIN FESTIVALS, INC.,

    Defendant.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff Michele St. Michael ("Ms. St. Michael" or "Plaintiff") on behalf of herself and by and through her attorneys, Hunter A. Swain and Diane S. King of KING & GREISEN, LLP, submits this Second Amended Complaint and Jury Demand against Defendant Rocky Mountain Festivals, Inc. ("RMF" or "Defendant"), as follows:

### I. INTRODUCTION

1. This employment discrimination, retaliation, and breach of contract action arises from the termination of Plaintiff Michele St. Michael's employment at the Colorado Renaissance Festival (the "Festival"), where she worked for over thirty (30) years.

2. Ms. St. Michael is a sixty-three (63) year-old woman and a professional fortune teller who has practiced palmistry and tarot since she was a teenager. Between early 1980s and

2015, Ms. St. Michael worked as a tarot card reader at the annual Colorado Renaissance Festival, which is wholly owned and operated by Defendant Rocky Mountain Festivals, Inc.

3. Late one night during the 2013 Festival, a Festival manager named David Walker confiscated Ms. St. Michael's Festival entrance pass and told her that he would only return the pass if she performed oral sex on him. Ms. St. Michael forcibly rejected the sexual advance and fled for her safety.

4. After Ms. St. Michael rejected Walker's attempt at *quid pro quo* sexual harassment, Walker began retaliating against Ms. St. Michael by – among other things – lobbying for the non-renewal of Ms. St. Michael's annual contract to work at the Festival. Ultimately, Walker succeeded at convincing the Defendant to terminate Ms. St. Michael's employment.

5. On February 17, 2016, Ms. St. Michael learned that the Defendant had decided to terminate her employment when the Defendant informed her that her annual contract to work at the Colorado Renaissance Festival would not be renewed for the summer of 2016.

6. At the time of Ms. St. Michael's termination, she was sixty-one (61) years old and was one of the longest-serving performers at the Festival.

7. The basis for the Defendant's decision to terminate Ms. St. Michael's employment was twofold. First, the Defendant terminated Ms. St. Michael's employment in retaliation for her protected activity in opposition to David Walker's unlawful sexual harassment, and for her complaints that David Walker had subjected her to sexual harassment. Second, the Defendant terminated Ms. St. Michael's employment because of her age as part of an age-

discriminatory effort to reduce the number and visibility of older workers near the Festival entrance.

8. In addition, the Defendant breached a written contract with Ms. St. Michael by destroying a wooden structure owned by her without notifying her in advance or giving her a meaningful opportunity to relocate or sell the structure. Defendant knew that Ms. St. Michael had not received noticed to sell or relocate her wooden structure before Defendant destroyed the structure. Defendant's decision to destroy Ms. St. Michael's property was inconsistent with its usual practice of allowing non-renewed workers an opportunity to relocate or sell their structures.

9. In destroying Ms. St. Michael's personal property, the Defendant retaliated against Ms. St. Michael in violation of Title VII and breached both an express term of their written agreement and the implied covenant of good faith and fair dealing inherent in every contract under Colorado state law.

10. Ms. St. Michael brings claims for (1) retaliation in violation of Title VII of the Civil Rights Act of 1964; (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); (3) breach of an express contractual provision in violation of the common law of the State of Colorado; and (4) breach of the implied covenant of good faith and fair dealing in violation of the common law of the State of Colorado.

## II. **JURISDICTION AND VENUE**

11. This action arises under the Constitution and laws of the United States of America and the State of Colorado, including Article III, Section 1 of the United States Constitution.

12. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331 & 1343, and 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976.

13. Jurisdiction of this Court is further invoked pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists among the Parties.

14. This action is authorized and instituted pursuant to is authorized by and instituted pursuant to: (a) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) & (3); (b) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(c)(1); and (c) Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A.

15. Venue lies in this judicial district under 28 U.S.C. § 1391(b) as all of the unlawful employment practices alleged herein occurred in the State of Colorado.

16. All procedural prerequisites for filing this suit have been met. Plaintiff timely filed a Charge of Discrimination alleging age discrimination and retaliation against Rocky Mountain Festivals, Inc. with the United States Equal Employment Opportunity Commission ("EEOC").

17. Ms. St. Michael received a Notice of Right to Sue from the EEOC on September 9, 2016, and initiated this lawsuit by filing her initial Complaint within ninety (90) days of receiving such notice.

### III. PARTIES

18. Michele St. Michael is a natural person who is and at all times relevant to this Complaint has been a resident of the State of Hawaii.

19. At all times relevant to this Complaint, Ms. St. Michael was an "employee" of Rocky Mountain Festivals, Inc. as the term "employee" is defined by the ADEA.

20. At all times relevant to this Complaint, Ms. St. Michael was an "employee" of Rocky Mountain Festivals, Inc. as the term "employee" is defined by Title VII.

21. Defendant Rocky Mountain Festivals, Inc. is a Minnesota corporation with its principal office street address at 5965 Loring Drive, Mound, Minnesota 55364. According to the Defendant's most recent filing with the Colorado Secretary of State, Defendant's principal office mailing address is 409F South Wilcox Road, Castle Rock, Colorado 80104.

22. At all relevant times, Rocky Mountain Festivals, Inc. has been an "employer," as the term "employer" is defined by the ADEA.

23. At all relevant times, Rocky Mountain Festivals, Inc. has been an "employer" as the term "employer" is defined by Title VII.

## IV. **FACTUAL ALLEGATIONS**

### *Michele St. Michael worked at the Colorado Renaissance Festival for over three decades.*

24. Michele St. Michael is a sixty-three (63) year old woman who earns her living as a professional tarot card reader and palmist. Ms. St. Michael first began practicing divination when she was a teenager in the 1960s.

25. Ms. St. Michael began working as a tarot card reader at the Colorado Renaissance Festival (the "Festival") in the early 1980s.

26. The Festival has been held on an annual basis since approximately 1976. Defendant Rocky Mountain Festivals, Inc. has owned and operated the Festival since the early 1990s.

27. The Festival is a commercial theme park event held annually in Larkspur, Colorado, and is typically open during the months of June, July, and August. At the Festival,

guests pay an entry fee to enter. Inside the festival, guests may, among many other things, watch musical and theatrical acts and purchase clothing, art, entertainment services, and food.

28. Defendant owns and operates at least one (1) other renaissance festival, the Pittsburgh Renaissance Festival in Pittsburgh, Pennsylvania, which is typically open during the months of August and September.

29. At both the Colorado Renaissance Festival and the Pittsburgh Renaissance Festival, hundreds of individuals work at the festival sites before, during, and after the festival dates.

30. In the 1990s, Ms. St. Michael constructed a wooden structure on the Festival grounds (with the permission of the Defendant) in which to perform her tarot readings. The structure remained in that same location until it was destroyed by the Defendant in May 2016.

31. Also in the 1990s, the Defendant moved the front entrance of the Festival to be nearby Ms. St. Michael's wooden structure, placing Ms. St. Michael in one of the most coveted and valuable locations in the Festival, in large part because of the high volume of foot traffic near the Festival entrance.

***The individuals who work at the Festival – including Ms. St. Michael – are employees of the Defendant.***

32. Hundreds of people work for the Defendant both off Festival grounds (as administrative employees of Rocky Mountain Festivals, Inc.) and on Festival grounds (as participants in the Festival). Defendant categorizes the individuals who work on Festival grounds into three (3) categories: employees, entertainers, and crafters/artisans.

33. Generally speaking, the Defendant chooses to characterize entertainers as independent contractors and crafters/artisans as renters of space, rather than as employees.

34. However, the Defendant exercises strict control over almost every aspect of the work performed by entertainers and crafters/artisans at the Festival, such that substantially all of the individuals who work at the Festival are "employees" for the purposes of Title VII and the ADEA.

35. In the case of Ms. St. Michael, Defendant exercised strict control over almost every aspect of Ms. St. Michael's work at the Colorado Renaissance Festival.

36. For instance, Defendant required St. Michael to be present and working at the Festival grounds between the hours of 10 a.m. and 6:30 p.m. each day the Festival was open, without exception. Ms. St. Michael was required to be performing work at the Festival during hours chosen unilaterally by the Defendant, rain or shine, no matter whether Ms. St. Michael wanted to work at a particular time or on a particular day.

37. Ms. St. Michael was required to follow every instruction given to her by certain managers of Defendant, including James Paradise, Sr. (the principal owner and President of Defendant), James Paradise, Jr., and the Craft Coordinator (the individual who was the direct supervisor of all the crafters/artisans).

38. James Paradise, Sr. personally directed Ms. St. Michael's work by, for example, instructing her where she was allowed to perform tarot readings, choosing which color Ms. St. Michael would be required to paint her wooden structure, and instructing Ms. St. Michael to change or create new signage.

39. Ms. St. Michael's activities while she was present at the Festival during work hours were carefully controlled by Defendant. For example, Ms. St. Michael was not permitted to perform any commercial activities at the Festival except for palmistry and tarot card reading. Ms. St. Michael was also forbidden from having any "historical anachronisms" visible at her booth – such as water bottles, modern food items, cellular phones, or wristwatches. Ms. St. Michael was also prohibited from smoking.

40. The Defendant also strictly controlled Ms. St. Michael's attire and physical appearance while she was working on Festival grounds. Ms. St. Michael was required by the Defendant to dress in a uniform of period clothing at all times while on the Festival grounds during Festival hours; for instance, Ms. St. Michael was required to wear a renaissance gypsy costume, a hat or garland, and close-toes shoes, and was not free to dress as she pleased except for within strict parameters chosen by the Defendant. The Defendant further forbade Ms. St. Michael from wearing sunglasses, dreadlocks, or certain colors of hair dye.

41. Defendant enforces similarly strict rules and regulations for the physical appearance, dress, conduct, and behavior of all of the other individuals who work at the Colorado Renaissance Festival. By way of example, a copy of the application to work at the 2019 Festival as an "artisan," which contains only "a *partial* list of the rules and regulations for the 2019 Colorado Renaissance Festival," (emphasis added), is attached hereto as Exhibit 1.

42. Furthermore, the Defendant's own practices indicate that it considered Ms. St. Michael to be an "employee" of the festival. For example, Ms. St. Michael was issued a badge which designated her with an "employee number."

***Festival Site Manager David Walker subjects Ms. St. Michael to sexual harassment.***

43. In approximately 1995, Defendant hired a man named David Walker as the Festival's Site Manager. At that time, Ms. St. Michael had been working at the Festival for over a decade.

44. On July 13, 2013, Ms. St. Michael attended a "Bastille Day" party on the Festival grounds after the Festival had closed for the night. After midnight, Ms. St. Michael left the party to return to the place where she was staying in Manitou Springs, Colorado.

45. As Ms. St. Michael was attempting to leave the Festival, David Walker blocked Ms. St. Michael's vehicle with an all-terrain vehicle he was driving. Ms. St. Michael rolled down her window, and Walker demanded her Festival entrance pass. Ms. St. Michael complied with the instruction and handed the pass to Walker.

46. After Ms. St. Michael handed the entrance pass to Walker, he refused to give it back. Ms. St. Michael exited her vehicle and repeatedly asked Walker for the pass back. After a few moments of Ms. St. Michael politely asking for him to return her pass, Walker grabbed his crotch and stated: "Suck this bitch if you want your pass back." Walker was referring to Ms. St. Michael performing oral sex on him.

47. As Ms. St. Michael walked back to her car, Walker unzipped the zipper of his pants. Shaken and crying, Ms. St. Michael left the Festival grounds without her Festival entrance pass.

### *After Ms. St. Michael rejects Walker's sexual advance and complains to her supervisor, Walker begins retaliating by attempting to have Ms. St. Michael fired.*

48. The day after Walker sexually harassed her, Ms. St. Michael attempted to report Walker's harassment to her direct supervisor, Craft Coordinator Christine Lowenberg. Ms. St. Michael informed Lowenberg that Walker had taken away her pass and refused to give it back; as Ms. St. Michael began to explain that Walker had demanded oral sex as a condition of returning the pass, Lowenberg interrupted, stating that she would get Ms. St. Michael's pass back from Walker, but that she did not want to hear anything else about what had happened.

49. Walker immediately began attempting to have Ms. St. Michael fired from the Festival in retaliation for turning down his sexual advance and for her complaint to Lowenberg. Later, in 2016, Walker retaliated against Ms. St. Michael for complaining about his sexual harassment to then-Craft Coordinator Caitlin Pacer.

50. Upon information and belief, in the weeks following Ms. St. Michael's rejection of Walker's sexual proposition, Walker began repeatedly bringing up the idea of firing Ms. St. Michael during administrative meetings, making statements such as "She has to go."

51. Walker's efforts to have Ms. St. Michael fired were unsuccessful at first because then-Craft Coordinator Christine Lowenberg realized that Ms. St. Michael was an exemplary worker, and protected Ms. St. Michael from being fired. Thus, the Defendant renewed Ms. St. Michael's contract to work at the Festival in 2014. Nonetheless, during the 2014 Festival, Walker continued repeatedly insisting that Ms. St. Michael be fired from the Festival.

52. Between 2014 and the termination of Ms. St. Michael's employment in 2016, Walker demonstrated retaliatory animus and open animosity toward her on a regular basis by

verbally abusing Ms. St. Michael, glaring at her, and by refusing or unnecessarily delaying her maintenance requests.

53. However, Walker was unsuccessful at having Ms. St. Michael fired in retaliation until Caitlin Pacer replaced Christine Lowenberg as Craft Coordinator in 2015.

***Walker succeeds in having Ms. St. Michael fired after enlisting the help of new Craft Coordinator Caitlin Pacer, who is eager to eliminate older workers near the Festival entrance.***

54. In 2014, Ms. St. Michael and the Defendant executed a written contract for Ms. St. Michael to work at the Festival for the summer of 2015 (the "2015 Agreement").

55. Toward the end of the 2014 Festival, in July 2014, Ms. St. Michael's direct supervisor, Craft Coordinator Christine Lowenberg, began training a woman named Caitlin Pacer to become the Craft Coordinator for the 2015 Festival.

56. Pacer replaced Lowenberg as Craft Coordinator during the 2015 Festival, becoming Ms. St. Michael's direct supervisor.

57. Pacer was antagonistic toward the older crafters/artisans that she supervised and was preoccupied with creating a more youthful image among all the crafters/artisans, particularly those near the front entrance to the Festival.

58. As Craft Coordinator, Pacer was responsible for, among other things, enforcing Defendant's strict rules about the clothing that Ms. St. Michael would be required to wear while working at the Festival.

59. As part of her age-discriminatory campaign, Pacer instructed Ms. St. Michael to change costumes from the renaissance gypsy outfit she had always worn to a tight, sexy corset.

11

60. Ms. St. Michael protested Pacer's instruction, complaining that the suggestion that she (a 62-year-old woman) would be required to wear a corset was age-discriminatory and historically-inaccurate. Pacer bristled at Ms. St. Michael's statement that she should be allowed to wear clothing that was more age-appropriate and historically-accurate.

61. After Pacer became Craft Coordinator and began her push to get rid of older workers near the Festival entrance, Walker's campaign to retaliate against Ms. St. Michael finally began to gain traction.

62. In 2016, Walker succeeded in convincing Pacer and James Paradise, Sr. to not renew Ms. St. Michael for the Festival.

63. On January 18, 2016, Jim Paradise (principal owner and President of Rocky Mountain Festivals, Inc.) sent Ms. St. Michael a letter via certified mail which purported to give her notice that she had five (5) days to remove her booth and other personal property from the Festival site. Ms. St. Michael never received the letter, and the Defendant received a return receipt which indicated that the letter had not been delivered to Ms. St. Michael.

64. On February 17, 2016, Ms. St. Michael spoke to Caitlin Pacer on the telephone to inquire about the renewal of her contract to work at the 2016 Festival. Ms. St. Michael explained that Dave Walker had subjected her to sexual harassment years earlier and had been trying to get her fired because she had rejected his sexual proposition. At that time, Pacer informed Ms. St. Michael that the Defendant was not renewing her contract for the 2016 Festival, and that the decision was final.

65. On March 7, 2016, Caitlin Pacer called Ms. St. Michael to follow up on Ms. St. Michael's repeated requests to be able to move to a different location within the Festival in lieu

of being fired. Pacer informed Ms. St. Michael that the Defendant would not allow her to move to a different location; Pacer did not inform Ms. St. Michael that the Defendant planned on destroying her booth without giving her an opportunity to relocate or sell the booth.

66. In mid-May 2016, soon after Ms. St. Michael complained to Caitlin Pacer that David Walker had subjected her to sexual harassment, Defendant retaliated against Ms. St. Michael by using a bulldozer to demolish the wooden structure Ms. St. Michael had built and had worked in for years. David Walker operated the bulldozer to destroy Ms. St. Michael's structure on behalf of Defendant.

67. Paragraph 7 of the 2015 Agreement between Ms. St. Michael and Defendant provides:

> **Property/Ownership/Renewal**. Exhibitor may construct only a temporary structure on Leased Space. For purposes of determining the rights and obligations of the Parties hereto, in the event of termination of this agreement, the parties agree that all structures constructed on or now existing on the leased space are and will be considered personal property. Exhibitor must remove all personal property (including any structure) from the Leased Space within at least five (5) days after receiving a notice from the Company to remove such personal property during or prior to the term of this lease, unless (I) the Company has provided Exhibitor with an alternative space of comparable size to which such personal property may be located, or II) Exhibitor's rights under this Agreement have been terminated by the Company. Exhibitor may not remove any structure from the Leased Space during normal business hours during Festival Day. If personal property of Exhibitor is not removed from the Leased Space within the applicable notice period, or if any personal property remains on the Lease Space for a period of six months after the end of the term of this lease, then such personal property shall be automatically assigned to and become the property of the Company, and may, at the Company's option, be removed or may be retained in the Leased Space for use by the Company. The removal of the personal property as provided herein shall be solely at Exhibitor's expense. No structure constructed on the Leased Space, or any interest therein, may be sold or assigned by Exhibitor to any third party without the express written approval of the Company.

68. Thus, by the express terms of Paragraph 7 of the 2015 Agreement, the wooden structure destroyed by the Defendant in mid-May 2016 was the personal property of Ms. St. Michael.

69. Defendant breached its obligations under Paragraph 7 of the Agreement because it destroyed Ms. St. Michael's personal property knowing that she had not received written notice to remove her personal property. Defendant neither (a) provided Ms. St. Michael with an alternative space of comparable size to which such personal property may be located, or (b) terminated Ms. St. Michael's rights under the agreement before destroying her personal property.

70. The Defendant's decision to destroy Ms. St. Michael's booth without giving her a meaningful opportunity to sell or relocate the property was inconsistent with its normal practice from non-renewed workers who had not complained of sexual harassment. For instance, the same year Defendant fired Ms. St. Michael, the Defendant allowed two (2) other non-renewed workers who had not complained of sexual harassment to sell their booths rather than destroying the booths.

71. Upon information and belief, the value of Ms. St. Michael's personal property destroyed by the Defendant in breach of the 2015 Agreement exceeded $75,000.

72. In 2017, Ms. St. Michael visited the Festival as a patron. Defendant retaliated (and demonstrated its retaliatory animus with respect to prior acts against Ms. St. Michael) by having her escorted off the premises by the police, and banning her from returning to the Festival.

# V. LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF:

**Retaliation for Engaging in Protected Activity in Violation of Title VII of the Civil Rights Act of 1964**

73. Plaintiff realleges and incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

74. Plaintiff engaged in protected activity under Title VII by forcibly rejecting David Walker's demand that she perform oral sex on him. In doing so, Plaintiff opposed a hostile work environment and/or *quid pro quo* harassment on the basis of her sex, a practice made unlawful by Title VII.

75. Plaintiff engaged in protected activity under Title VII by verbally complaining to Caitlin Pacer and others about David Walker's demand that she perform oral sex on him. In doing so, Plaintiff opposed a hostile work environment and/or *quid pro quo* harassment on the basis of her sex, a practice made unlawful by Title VII.

76. Defendant knew that Plaintiff had engaged in protected activity under Title VII.

77. Beginning almost immediately after Plaintiff first engaged in protected activity in 2013, Defendant began retaliating against Ms. St. Michael. Defendant then terminated Plaintiff's employment and destroyed her property. Those actions were directly causally related to Plaintiff's protected activity in opposition to practices made illegal by Title VII.

78. A reasonable employee would find termination of employment and destruction of her personal property to be materially adverse employment actions.

79. The effect of Defendant's practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected her employment status because of her sex and because of her complaints of discrimination and retaliation.

80. These unlawful employment practices were intentional.

81. Defendant engaged in the unlawful employment practices with malice or with reckless indifference to Plaintiff's federally protected civil rights.

### SECOND CLAIM FOR RELIEF:

**Age Discrimination in Violation of the Age Discrimination in Employment Act**

82. Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

83. As a sixty-two-year-old woman at the time of her termination, Plaintiff is and was a member of the class of persons protected from unlawful discrimination under the ADEA during the relevant time periods.

84. At all relevant times, Plaintiff was qualified for her position with Defendant and performed her position satisfactorily.

85. Despite her qualifications, Plaintiff was terminated from her employment with Defendant because of her age as part of an effort to eliminate older Festival workers near the front entrance to the Festival.

86. Defendant's actions toward Plaintiff were engaged in intentionally and willfully, and in reckless disregard for Plaintiff's federally protected rights.

87. Defendant's unlawful acts toward Plaintiff caused her significant damages, injuries, and losses.

# THIRD CLAIM FOR RELIEF:

**Breach of Express Contractual Terms in Violation of the
Common Law of the State of Colorado**

88. Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

89. The 2015 Agreement is a valid written contract between Ms. St. Michael and Rocky Mountain Festivals, Inc.

90. Plaintiff has performed all obligations and complied with all conditions under the 2015 Agreement except as waived, excused, or prevented by Defendant.

91. Defendant's actions as set out above, including its purposeful destruction of the wooden structure built by Ms. St. Michael on Festival grounds, is a breach of one or more express terms of the 2015 Agreement.

92. Defendant's actions as set out above, including its purposeful destruction of the wooden structure built by Ms. St. Michael on Festival grounds, is a material breach of the 2015 Agreement.

93. Defendant's breach of one or more express terms of the 2015 Agreement has damaged Plaintiff in an amount to be proven at trial, believed to exceed $75,000.

94. Defendant's breach of one or more express terms of the 2015 Agreement has caused and is continuing to cause Plaintiff irreparable harm for which money damages will not be capable of fully remedying.

# FOURTH CLAIM FOR RELIEF:

**Breach of Implied Covenant of Good Faith and Fair Dealing in Violation of the Common Law of the State of Colorado**

95. Plaintiff incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

96. The 2015 Agreement is a valid written contract between Ms. St. Michael and Rocky Mountain Festivals, Inc.

97. Plaintiff has performed all obligations and complied with all conditions under the 2015 Agreement except as waived, excused, or prevented by Defendant.

98. Defendant's actions as set out above, including its purposeful destruction of the wooden structure built by Ms. St. Michael on Festival grounds, is a breach of the implied covenant of good faith and fair dealing of the 2015 Agreement, which is an element of all contracts under Colorado law.

99. Defendant's actions as set out above, including its purposeful destruction of the wooden structure built by Ms. St. Michael on Festival grounds without giving her a meaningful opportunity to sell or relocate the structure, is a material breach the 2015 Agreement.

100. Defendant's breach of the implied covenant of good faith and fair dealing in the 2015 Agreement has damaged Plaintiff in an amount to be proven at trial, believed to exceed $75,000.

101. Defendant's breach of the implied covenant of good faith and fair dealing in the 2015 Agreement has caused and is continuing to cause Plaintiff irreparable harm for which money damages will not be capable of fully remedying.

## VI.     RELIEF REQUESTED

**WHEREFORE**, the Plaintiff respectfully requests:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendant;

3. That this Court declare the actions of Defendant described in this Complaint to be in violation of Title VII, as amended, the ADEA, and the common law of the State of Colorado;

4. That this Court award Plaintiff all appropriate relief at law and equity, including but not limited to back pay with pre-judgment interest, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

5. That this Court grant compensatory and consequential damages against Defendant, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendant, as allowed by law;

6. That this Court grant actual, compensatory, and consequential damages for breach of contract;

7. That this Court grant exemplary and/or punitive damages as allowed by law;

8. That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

9. That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

10. That this Court award such additional or alternative relief as may be just, proper

and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 27th day of August, 2018.

Respectfully submitted,

KING & GREISEN, LLP

*s/Hunter A. Swain*
Hunter A. Swain
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
swain@kinggreisen.com

*/s/Diane S. King*
Diane S. King
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
king@kinggreisen.com

*Attorneys for Plaintiff*

**Plaintiff's Address:**

Michele St. Michael
PO Box 1566
Hanalei, HI 96714